# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### SOUTHERN DIVISION

|  |  |
|---|---|
| TOYO TIRE & RUBBER CO. LTD and TOYO TIRE U.S.A. CORP.,<br><br>Plaintiffs,<br><br>v.<br><br>HONG KONG TRI-ACE TIRE CO., LTD., TRI-ACE WHEEL & TIRE CORPORATION, VOMA TIRE CORPORATION, ITG VOMA CORP., and DOUBLESTAR DONG FENG TYRE CO., LTD.,<br><br>Defendants. | Case No.: SACV 14-00054-CJC(JPRx)<br><br><br>ORDER GRANTING IN PART PLAINTIFFS' MOTION FOR ATTORNEYS' FEES AND COSTS |

//
//
//
//
//

# I. INTRODUCTION & BACKGROUND

Before the Court is Plaintiffs Toyo Tire & Rubber Co., Ltd., and Toyo Tire U.S.A. Corp.'s (collectively "Toyo") motion for attorneys' fees and costs. (Dkt. 27 [hereinafter, "Mot."].) Toyo seeks attorneys' fees and costs for litigation that Toyo contends was reasonably and necessarily incurred in an attempt to enforce compliance with the Final Judgment. For the following reasons, the motion is GRANTED IN PART.[1]

The facts of this case are detailed in the Court's order granting in substantial part Toyo's motion for civil contempt. (Dkt. 34.) The facts relevant to this motion are as follows.

Toyo brought this case against Defendants Hong Kong Tri-Ace Wheel & Tire Corporation, Voma Tire Corporation, ITG Voma Corp., and Doublestar Dong Feng Tyre Co., Ltd. ("DDF"), on January 14, 2014, alleging seven claims for relief based on Defendants' alleged infringement of Toyo's intellectual property in its tire designs, including trade dress infringement. (*See* Dkt. 1.) The Court entered a judgment in Toyo's favor on March 10, 2014, ("Final Judgment"), (Dkt. 10), pursuant to the parties' stipulation that the Mark Ma Dakar M/T tire ("Mark Ma tire") infringed on the Open Country M/T tire ("OPMT tire") trade dress, (Dkt. 8). Toyo requests **$3,154** in attorneys' fees and costs for **Stage One** of its enforcement efforts, which included follow-up work after receipt of the Final Judgment and developing monitoring procedures for ensuring compliance with the Final Judgment. (Mot. at 2; Dkt. 35-1 [Declaration of William Robinson, hereinafter "Robinson Decl."] ¶ 14.)

---

[1] Having read and considered the papers presented by the parties, the Court finds this matter appropriate for disposition without a hearing. *See* Fed. R. Civ. P. 78; Local Rule 7-15. Accordingly, the hearing set for January 29, 2018, at 1:30 p.m. is hereby vacated and off calendar.

Upon later investigation, Toyo discovered that the AMP M/T ("AMP") tire was manufactured in China by Qingdao Doublestar Tire Industrial Co., Ltd. ("QDT"), that QDT was a sister company of DDF, and that both QDT and DDF were owned by Doublestar Group Corp ("DGC").  (Dkt. 27-1 ¶ 6.)  Toyo believed that the AMP tire infringed on the OPMT trade dress.  Toyo requests **$3,874** in attorneys' fees and costs for **Stage Two** of its enforcement efforts, which included its investigations into the AMP tire and attempts to resolve Defendants' alleged violation of the Final Judgment.  (Mot. at 2; Robinson Decl. ¶ 14.)

On November 13, 2014, Toyo filed a motion for civil contempt against DDF, QDT, and DGC in light of Toyo's belief that the AMP tire violated the Final Judgment.  (Dkt. 13.)  None of the alleged contemnors responded.  (Dkts. 15, 22 at 4.)  On December 12, 2014, the Court denied Toyo's motion without prejudice because Toyo failed to meet is evidentiary burden to show that QDT and DGC were bound by the Final Judgment, that DDF violated the terms of the Final Judgment, and for lack of notice to the Defendants, who did not respond to the motion.  (Dkt. 16 at 3–4.)  Toyo requests **$15,723.69** in attorneys' fees and costs for **Stage Three** of its enforcement efforts–its briefing on its first unsuccessful contempt motion.  (Mot. at 2; Robinson Decl. ¶ 14.)

On February 12, 2015, Toyo filed a second lawsuit against CIA Wheel Group ("CIA"), DDF, QDT, and DGC, (SACV 15-00246-CJC(JPRx) [hereinafter "CIA Case"] at Dkt. 1), seeking relief for trade dress infringement regarding the AMP tire, amongst other claims, (*id.* at Dkt. 75).  The CIA Case was assigned to Judge David O. Carter.  Based on new evidence Toyo obtained through discovery in the CIA Case, Toyo renewed its motion for civil and criminal contempt before this Court on September 26, 2016.  (Dkt. 17.)  On October 18, 2016, the Court denied Toyo's motion without prejudice in light of Toyo's filing of the CIA Case, where the protectability of the claimed trade dress was "heavily litigated," and indicated to Toyo that it may renew its motion "if and when

[Toyo] prevail[s] in the CIA Case." (Dkt. 21 at 3.) Toyo requests **$42,332.62** in attorneys' fees and costs for **Stage Four** of its enforcement efforts–its briefing on its second unsuccessful contempt motion. (Mot. at 2; Robinson Decl. ¶ 14.)

CIA filed a motion to bifurcate the trial in the CIA Case. (CIA Case at Dkt. 220.) In order to rule on CIA's motion, on October 27, 2016, Judge Carter ordered Toyo to submit briefing on the role that the stipulation and Final Judgment, entered in this case, should play in the CIA Case. (*Id*. at Dkt. 230.) Toyo requests **$80,790.53** in attorneys' fees and costs for **Stage Five** of its enforcement efforts–briefing ordered in the CIA Case that Toyo argues it "borrowed extensively" from in its later contempt motions. (Mot. at 2; Robinson Decl. ¶ 14.) On January 23, 2017, Judge Carter issued an order on the effect of the stipulation and Final Judgment in the CIA Case, as related to CIA's motion to bifurcate the trial, holding that sales of the AMP tire were precluded by the Final Judgment. (CIA Case Dkt. 262.)

On February 6, 2017, Toyo again renewed its motion for civil and criminal contempt in light of Judge Carter's ruling. (Dkt. 22.) On February 27, 2017, the Court denied Toyo's motion without prejudice, holding that Judge Carter's procedural order did not support contempt, and again indicated that Toyo "may renew its motion following the conclusion of its proceedings before Judge Carter." (Dkt. 26 at 6–7.) Toyo requests **$37,619.75** in attorneys' fees and costs for **Stage Six** of its enforcement efforts–its briefing on its third unsuccessful contempt motion. (Mot. at 2; Robinson Decl. ¶ 14.)

On March 13, 2017, Judge Carter bifurcated the CIA Case, (*See* CIA Case at Dkts. 262, 298), and Toyo's action against Defendants DDF, QDT, and DGC was transferred to this Court, (*id*. at Dkt. 344). On June 5, 2017, the Court directed Toyo to file a motion for summary judgment on three discrete issues: (1) to what extent Defendants are judicially estopped from challenging the validity and enforceability of Plaintiff's trade

dress pursuant to the stipulated settlement, (2) whether the stipulated settlement bound Defendants other than DDF, and (3) whether that stipulated settlement covers the tires at issue in this case.  (*Id*. at Dkt. 349.)  On August 28, 2017, the Court denied Toyo's motion for partial summary judgment without prejudice and ordered Toyo to renew its motion for civil contempt.  (*Id*. at Dkt. 359.)  Toyo requests **$65,555.04** in attorneys' fees and costs for **Stage Seven** of its enforcement efforts–its briefing on its summary judgment motion in the CIA Case.  (Mot. at 2; Robinson Decl. ¶ 14.)

On October 9, 2017, Toyo filed its fourth motion for contempt civil contempt. (Dkt. 27.)  On November 20, 2017, the Court granted in substantial part Toyo's motion for civil contempt as to Defendants DDF and QDT.  (Dkt. 34.)  The Court denied Toyo's request for attorneys' fees and costs, and directed Toyo to submit its request for attorneys' fees and costs with detailed billing records to the Court.  (*Id*. at 30–32.)  Toyo requests **$62,468.22** in attorneys' fees and costs for **Stage Eight** of its enforcement efforts–its briefing on its fourth and successful contempt motion.  (Mot. at 2; Robinson Decl. ¶ 14.)

## II.  LEGAL STANDARD

Sanctions for civil contempt "may be imposed to coerce obedience to a court order, or to compensate the party pursuing the contempt action for injuries resulting from the contemptuous behavior, or both."  *General Signal Corp. v. Donallco, Inc.,* 787 F.2d 1376, 1380 (9th Cir. 1986) (citing *United States v. United Mine Workers,* 330 U.S. 258, 303–04 (1947)).  Compensatory awards may, under certain circumstances, include an award to the aggrieved party of the attorneys' fees and costs in bringing the contempt proceeding.  *See Reno Air Racing Ass'n., Inc. v. McCord*, 452 F.3d 1126, 1130 n.5 (9th Cir. 2006) (affirming the district court's award to plaintiff of reasonable attorneys' fees and costs associated with a temporary restraining order and a contempt motion); *Marshak*

*v. Treadwell*, 595 F.3d 478, 493 (3d Cir. 2009) (affirming an award of attorneys' fees, "which the [district] court deemed justified to cover [the party's] costs in securing the adjudication of contempt"); *Guess?, Inc. v. Tres Hermanos, Inc.*, No. CV 97-6336KMWCWX, 1998 WL 1770071, at *3 (C.D. Cal. June 1, 1998) (awarding attorneys' fees to bring contempt proceeding for contempt of preliminary injunction ordering defendant not to sell a product).

"[A]ttorneys' fees in a civil contempt proceeding are limited to those reasonably and necessarily incurred in the attempt to enforce compliance." *Abbott Labs. v. Unlimited Beverages, Inc.*, 218 F.3d 1238, 1242 (11th Cir. 2000); *see also Transgo, Inc. v. Ajac Transmission Parts Corp.*, 768 F.2d 1001, 1028 (9th Cir. 1985) (affirming award of attorneys' fees for successful contempt motions); *Robin Woods Inc. v. Woods*, 28 F.3d 396, 401 (3d Cir. 1994) (affirming the district court's conclusion that it was proper to award plaintiff compensation for management's time and expense in preparing for contempt hearing, but remanding as to the amount of damages); *Mead Johnson & Co. v. Baby's Formula Serv., Inc.*, 402 F.2d 23, 24 (5th Cir. 1968) (affirming the trial court award of out-of-pocket costs incurred in bringing proceeding for civil contempt).

In determining whether an award of attorneys' fees is reasonable, the lodestar method is the fundamental starting point. *Christensen v. Stevedoring Servs. of Am.*, 557 F.3d 1049, 1053 (9th Cir. 2009); *City of Burlington v. Dague*, 505 U.S. 557, 562 (1992) (stating that "the 'lodestar' figure has . . . become the guiding light of [the court's] fee-shifting jurisprudence"). "The 'lodestar' is calculated by multiplying the number of hours the prevailing party reasonably expended on the litigation by a reasonable hourly rate.'" *Ferland v. Conrad Credit Corp.*, 244 F.3d 1145, 1149 n.4 (9th Cir. 2001) (citation and quotes omitted); *accord Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 978 (9th Cir. 2008). This lodestar amount is presumptively reasonable. *Pennsylvania v. Delaware Valley Citizens Council for Clean Air,* 478 U.S. 546, 564 (1986) (citing *Blum v.*

*Stenson,* 465 U.S. 886, 897 (1984)); *Jordan v. Multnomah County,* 815 F.2d 1258, 1262 (9th Cir.1987).  Reasonable hours expended on a case are hours that are not "'excessive, redundant, or otherwise unnecessary.'"  *McCown v. City of Fontana*, 565 F.3d 1097, 1102 (9th Cir. 2009) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983)).  The party seeking the fees has the initial burden of demonstrating the time spent on the case and that such time was reasonably necessary.  *Frank Music Corp. v. Metro–Goldwyn Mayer Inc.*, 886 F.2d 1545, 1556 (9th Cir. 1989), *cert. denied,* 494 U.S. 1017 (1990).

## III.  DISCUSSION

### A.  Reasonable Hourly Rate

An attorney's hourly rate is reasonable if it is in line with the prevailing market rate of the relevant legal community.  *Blum,* 465 U.S. at 895.  The Court also draws on the precedent from other courts, its knowledge of the prevailing community rates, and its evaluation of the quality of the worked performed by counsel.  *Allianz Life Ins. v. Agorio*, No. C 11-04404, 2012 WL 440722, *6 (N.D. Cal. Feb. 10, 2012).

Toyo seeks the following hourly rates for each of the four attorneys who worked on this litigation:  William J. Robinson at a rate of $745-800 per hour; Craig S. Fochler at a rate of $785 per hour; Victor de Gyarfas at a rate of $675-695 per hour; and Jean-Paul Ciardullo at a rate of $510-635 per hour.  (Robinson Decl. at 10–11.)  In support of Toyo's request, Toyo submitted a declaration regarding the qualifications and hourly rates of the attorneys who worked on this matter.  (*See generally Id*.; Dkts. 35-2, 35-3, 35-4, 35-5.)  These rates are commensurate with the range of partner and associate billing rates in the Central District of California.  *See Toyo Tire & Rubber Co., Ltd v. Fitinparts-USA, LLC*, No. SACV15513JLSRNBX, 2016 WL 5219465, at *3 (C.D. Cal. June 3, 2016) (approving of Mr. Robinson's hourly rate of $790-820 in a trademark infringement

action); *Burton Way Hotels, Ltd. v. Four Seasons Hotels Ltd.*, No. CV 11-303 PSG (PLAX), 2015 WL 13081297, at *3 (C.D. Cal. Jan. 21, 2015) (approving of partner hourly rate of $751.50-886.50); *Keegan v. Am. Honda Motor Co, Inc.*, No. CV1009508MMMAJWX, 2014 WL 12551213, at *23 (C.D. Cal. Jan. 21, 2014) (approving of hourly rates for partners ranging from $570 (for a partner with ten years of experience) to $875 (for a partner with 34 years of experience) and hourly rates for associates ranging from $325 (for an associate with two years of experience) to $595 (for an associate with 13 years of experience)).  Additionally, Defendants do not oppose these hourly rates, or the qualifications of Toyo's counsel, which Defendants note "are similar to those charged" by their counsel.  (Dkt. 44 [Defendants' Opposition, hereinafter "Opp."] at 2 n.3.)

Accordingly, the Court finds the requested rates are reasonable.

**B.  Hours Necessarily and Reasonably Incurred**

*i. Stages One and Two*

Toyo requests attorneys' fees and costs for Stage One and Two, its initial efforts to monitor Defendants' compliance with the Final Judgment and investigate the AMP tire, which Toyo believed violated the Final judgment.  (Mot. at 2.)  Defendants do not oppose the requested fees and costs from these stages.  Both Toyo's monitoring and investigation were necessarily and reasonably incurred to enforce compliance with the Final Judgment. The reasonableness of Toyo's investigative efforts in Stage Two is underscored by the fact the Court ultimately found that QDT and DDF's sales of the AMP tire violated the Final Judgment.  Thus, the Court GRANTS Toyo's motion for **$7,028** in attorneys' fees and costs for Stages One and Two.

1

2

*ii. Stages Three, Four, and Six*

3      Toyo requests attorneys' fees and costs for Stages Three, Four, and Six, for its first

4   three contempt motions that the Court denied.  Toyo argues that the arguments made in

5   these three unsuccessful contempt motions were ultimately accepted in the Court's

6   November 20, 2017, order granting contempt, and its successful contempt motion built

7   off of Toyo's previous work.  (Mot. at 2.)  However, the Court's ultimate ruling that QDT

8   and DDF were in contempt of the Final Judgment does not mean that every previous

9   occasion Toyo made similar arguments was "necessarily and reasonably incurred to

10  enforce compliance" with the Final Judgment.  While Toyo could rightfully pursue

11  contempt at any time, the ability to pursue contempt sanctions does not render all of

12  Toyo's efforts to do so necessary and reasonable.[2]

13

14      Toyo filed its first contempt motion without sufficient evidence of any of the

15  required elements to find Defendants in contempt.  Importantly, Toyo had no proof that

16  Defendants were on notice of the Final Judgment, and no Defendant participated in the

17  motion.  Simply put, Toyo filed this motion prematurely.  The Court will not now reward

18  Toyo for filing the first motion for contempt with insufficient evidence because Toyo

19  obtained a contempt judgment against QDT and DDF three years later.  To hold

20

21  [2] While Toyo cites civil rights cases where courts have granted attorneys' fees for unsuccessful stages of
22  litigation, (Dkt. 45 [Toyo's Reply, hereinafter "Reply"] at 3), the facts of those cases are inapposite to
    the circumstances before the Court–Toyo repeatedly filing the same motion and seeking attorneys' fees
23  in relation to civil contempt.  *See O'Neal v. City of Seattle*, 66 F.3d 1064, 1068–69 (9th Cir. 1995)
    (awarding attorneys' fees pursuant to 42 U.S.C § 1988 to a plaintiff on her unsuccessful motion for class
24  certification but prevailed on her individual claims because the motion for class certification "was not
    unrelated" to her individual claims and the "motion itself was not a separate claim, but rather a method
25  of pursuing her ultimately successful claims"); *Pierce v. Cty. of Orange*, 905 F. Supp. 2d 1017, 1032
    (C.D. Cal. 2012) (granting attorneys' fees for the plaintiffs' unsuccessful motions and oppositions, such
26  as on class certification, summary judgment, and sanctions).  While the Ninth Circuit has held that "a
    plaintiff who is unsuccessful at a stage of litigation that was a *necessary* step to her ultimate victory is
27  entitled to attorney's fees even for the unsuccessful stage," Toyo has not demonstrated how its three
    unsuccessful contempt motions were necessary and reasonable.  *Cabrales v. Cty. of Los Angeles*, 935
28  F.2d 1050, 1053 (9th Cir. 1991).

otherwise would create a perverse incentive for parties to file for contempt early and often, hoping to recover attorneys' fees based on an eventual finding of contempt.[3]  Thus, the Court DENIES Toyo's motion for attorneys' fees and costs for Stage Three.[4]

Toyo filed its second contempt motion, for both civil and criminal contempt, after filing and "heavily litigat[ing]" the CIA Case against Defendants regarding the same conduct as the contempt motion–sale and production of the AMP tire.  The Court cannot say that the filing of this second contempt motion was "necessarily and reasonably incurred" to enforce compliance with the Final Judgment.  Toyo filed parallel actions attempting to enforce the Final Judgment through two different mechanisms–arguments on the merits and contempt.  Toyo provides no justification for why it was necessary and reasonable for it to seek to enforce the Final Judgment through litigation and contempt proceedings at the same time.  The Court expressed its concern regarding Toyo's second contempt motion when it denied the motion and directed Toyo to renew "if and when" it prevailed in the CIA Case.  Toyo contends that its second contempt motion "was a direct attempt to address the issues that had been raised by the Court" in denying the first contempt motion, thus the second motion was per se not unreasonable.  (Reply at 2.)  However, Toyo's possession of new, relevant evidence does not render seeking to enforce the Final Judgment through two, duplicative actions necessary and reasonable.  Nor does the fact that Toyo used its work on this motion in relation to its fourth and

---

[3] Toyo's citation to cases where courts determined the party moving for contempt sanctions was barred by laches as a result of unreasonable and prejudicial delay in bringing a motion for contempt are unpersuasive.  (Dkt. 45 [Toyo's Reply, hereinafter "Reply"] at 2–3.)  Toyo provides no reason why it reasonably moved for contempt before it had sufficient evidence on any of the required elements for the Court to hold Defendants in contempt.

[4] In *Transgo, Inc. v. Ajac Transmission Parts Corp.*, 768 F.2d 1001, 1028 (9th Cir. 1985), the Ninth Circuit found that a district court's award of attorneys' fees on a first unsuccessful contempt motion, as well as a second successful contempt motion that "alleged the same conduct as violation of the court's order," was neither excessive nor an abuse of discretion.  The district court had declined to rule on the merits of the first contempt motion.  *Id.*  Unlike the plaintiff in *Transgo*, Toyo filed three unsuccessful contempt motions spanning three years' time, commenced a separate, parallel litigation against the same Defendants, and ignored the Court's directions regarding renewing their contempt motion.

successful contempt motion, (Reply at 4), render the filing of its second contempt motion necessary and reasonable.[5]  Thus, the Court DENIES Toyo's motion for attorneys' fees and costs for Stage Four.

Toyo filed its third contempt motion only a few months after the Court denied its second contempt motion.  Toyo filed this third contempt motion while the CIA Case was still pending, despite the Court's clear directive that Toyo may renew its motion "if and when [Toyo] prevail[s] in the CIA Case."  (Dkt. 21 at 3.)  Toyo disregarded the Court's clear directions to wait until the appropriate time.  That Judge Carter had issued a favorable ruling in the CIA Case in ruling on a motion to bifurcate did not give Toyo reason to disregard the Court's directions.  Toyo argues that renewing the contempt motion was proper because CIA had settled in the CIA Case, leaving only Defendants in this action before Judge Carter.  (Reply at 8.)  CIA's settlement did not alleviate the Court's previously stated concerns about inconsistent judgments and the fact that the merits of Toyo's claims were being litigated before Judge Carter and not this Court.  Indeed, the Court denied Toyo's third contempt motion for the exact same reason as it denied the second–the CIA Case was still pending.  As it was not necessary and reasonable for Toyo to file its third motion while the CIA Case was still pending and in disregard of the Court's directions, the Court DENIES Toyo's motion for attorneys' fees and costs for Stage Six.

//

//

//

---

[5] Nor is the Court persuaded that Defendants' failure to respond to Toyo's first contempt motion created the need for Toyo to continue filing contempt motions and commencing the CIA Case.  (Reply at 2.)  Even if Defendants deliberately avoided answering Toyo's first contempt motion, this does not make Toyo's filing of the second contempt motion *while it had commenced and was litigating the CIA Case* necessary and reasonable.

### iii. Stages Five and Seven

Toyo requests attorneys' fees and costs for work performed in the CIA case that concerned the effect of the Final Judgment on Defendants, and thus overlapped with the issues presented in Toyo's fourth and successful contempt motion.  Simply put, these fees were not directly incurred *in contempt proceedings before this Court*.  Toyo's attorneys' fees and costs may be recoverable in the CIA Case and Toyo may attempt to seek the requested fees for Stages Five and Seven when that litigation concludes.

### vi. Stage Eight

Toyo requests attorneys' fees and costs for work performed on its fourth and successful contempt motion.  Defendants do not oppose these fees.  (Opp. at 6.)  Toyo prevailed on their motion for civil contempt in substantial part.  Toyo's fourth contempt motion was both necessary and reasonable to enforce compliance with the Final Judgment, as DDF and QDT had sold and produced the AMP tire in violation of its terms.  Thus, the Court GRANTS Toyo's motion for **$62,468.22** in attorneys' fees and costs for Stage Eight.

//
//
//
//
//
//
//
//
//

**IV.  CONCLUSION**

      For the foregoing reasons, Toyo's application for attorneys' fees and costs is GRANTED IN PART and DENIED IN PART.  DDF and QDT are ordered to pay Toyo **$69,496.22** in attorneys' fees and costs.

      DATED:     January 24, 2018

                                        CORMAC J. CARNEY
                               UNITED STATES DISTRICT JUDGE